**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN H. VASQUEZ | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 19 C 3084 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>OPINION AND ORDER</u>**

After Alan Vasquez pleaded guilty to one count of bank robbery under 18 U.S.C.

§ 2113(a), the Court sentenced him to 96 months in prison followed by three years of supervised

release. Proceeding *pro se*, Vasquez now moves to vacate, set aside, or correct his sentence

under 28 U.S.C. § 2255, asserting that he received ineffective assistance from his attorney in

connection with his guilty plea and sentencing. Because Vasquez has not shown that his attorney

rendered deficient legal assistance that prejudiced him, the Court denies Vasquez's § 2255

motion [1], thereby terminating his case. The Court further declines to certify any issue for

appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

On October 10, 2017, Vasquez entered Associated Bank in Third Lake, Illinois. He

approached a teller's station, placed a white plastic bag onto the counter, and stated, "This is a

robbery. Put the money in the bag." C.R. 15 at 2–3.[1] The teller placed $3,851 into the bag and

pushed the bag back to Vasquez. Vasquez left the bank with the bag of money, entered a

vehicle, and drove away. Shortly thereafter, a county sheriff's deputy identified Vasquez's car

and attempted to conduct a traffic stop. But Vasquez did not stop; he accelerated and started to

---

[1] The Court cites to the record in Vasquez's criminal case, No. 17 CR 669 (N.D. Ill.), as "C.R."

drive erratically. Unmarked police cars responded to assist and began to follow Vasquez. As he fled, Vasquez ran a red light and a stop sign, drove into oncoming traffic, and reached a speed of 73 mph in a 35-mph zone. He then merged onto the interstate and traveled down the highway. Upon leaving the highway, Vasquez entered a toll plaza where a car was stopped in the lane ahead of him. In attempting to get around the car, Vasquez struck it and a concrete median. The collision flattened Vasquez's front tire and disabled his car.[2] Officers arrested Vasquez, and a federal grand jury subsequently indicted Vasquez on one count of bank robbery by intimidation, in violation of 18 U.S.C. § 2113(a).

Vasquez originally entered a plea of not guilty, but later changed his plea to guilty. In his declaration setting forth his guilty plea, Vasquez represented that he had read the charge in the indictment, that his attorney had fully explained the charge to him, that he fully understood the nature and elements of the charged crime, and that he was pleading guilty because he was "in fact guilty of the charge contained in the indictment." C.R. 15 at 2; *see also id.* at 9 ("By pleading guilty[,] Mr. Vasquez admits he is guilty and agrees that he should be found guilty."). Vasquez then admitted that on October 10, 2017, he took $3,851 from an Associated Bank employee by intimidation. He also asserted that he was "extremely remorseful for his crime" and "accept[ed] full responsibility for his actions." *Id.* at 6.

With respect to his potential sentence, Vasquez recognized that the maximum sentence of incarceration is twenty years, that the Government may contend that his post-robbery flight justified a two-level increase in his offense level under United States Sentencing Guideline ("Guideline") § 3C1.2, and that the Court may deem him a career offender under Guideline § 4B1.1. Vasquez also expressed his understanding as to the effects of a career offender finding.

---

[2] The Court takes the facts surrounding the post-robbery car chase from the Probation Office's Presentence Investigation Report ("PSR"). Vasquez did not dispute these facts during sentencing.

2

Vasquez acknowledged that if the Court found that he was a career offender that has accepted responsibility, his criminal offense level would be 29 and his criminal history category would be VI, resulting in a likely Guidelines range of 151 to 188 months. Vasquez further acknowledged that if the Court found that he was not a career offender, his criminal offense level would be 21 and his criminal history category would be VI, resulting in a likely Guidelines range of 77 to 96 months.

Vasquez further indicated that he understood that by pleading guilty, he was waiving his rights to a trial, and he represented that his attorney had "explained those rights to him, and the consequences of his waiver of those rights." *Id.* at 8–9. Vasquez also declared his understanding that he was "waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence." *Id.* at 9. At the end of the declaration, Vasquez and his attorney "acknowledge[d] that no threats, promises, or representations have been made, nor agreements reached, to induce [Vasquez] to plead guilty," and Vasquez further "acknowledge[d] that he has read this Plea Declaration and carefully reviewed each provision with" his attorney. *Id.* at 11.

On February 27, 2018, the Court held a change of plea hearing at which Vasquez entered a plea of guilty to the bank robbery charge. During the hearing, Vasquez represented under oath that he had reviewed the indictment and plea declaration with his attorney; that his attorney had discussed with him the sentencing guidelines, statutory penalties, and the trial rights Vasquez was giving up by pleading guilty; that his attorney had answered all of his questions; and that he had enough time to discuss his case with his attorney. When the Court directly asked Vasquez whether he was satisfied with his attorney's representation so far, Vasquez answered: "I'm satisfied." Doc. 13-1 at 6:11–13. Vasquez further represented that he had read the plea

declaration before signing it; that he had voluntarily signed the declaration without pressure from anyone to sign; and that no one had forced, threatened, or made any promises to cause him to plead guilty. Vasquez also confirmed that the statements in the plea declaration regarding what happened during the robbery were correct. After the Government recited these facts, Vasquez told the Court "that's the truth right there. I went in there, told the teller what I said there, put the money in the bag, this is a robbery." *Id.* at 16:1–17:25.

The Probation Office submitted a PSR for Vasquez on April 13. Among other things, the PSR set forth the Government's version of the facts surrounding Vasquez's post-robbery car chase, and it identified three prior felony convictions for robbery: (1) an October 15, 2007 conviction for aggravated robbery under Illinois law; (2) an October 30, 2007 conviction for robbery under Illinois law; and (3) a May 28, 2010 conviction for bank robbery under 18 U.S.C. § 2113(a). The Probation Office also determined that Vasquez was a career offender and that, with the career offender enhancement, Vasquez's criminal offense level was 29 and his criminal history category was VI, resulting in a Guidelines range of 151 to 188 months. The Probation Office recommended a sentence of 188 months' imprisonment.

After the Probation Office disclosed the PSR and its sentencing recommendation to them, the Government and Vasquez filed sentencing memoranda. The Government sought a sentence within the career offender Guidelines range of 151 to 188 months' imprisonment. Vasquez sought a sentence of 80 months' imprisonment. To support this request, Vasquez's attorney explained how Vasquez had committed all three prior robberies during a single bad week in April 2007, and he argued that although these robberies technically made Vasquez a career offender, this was a function of the different jurisdictions and locales in which Vasquez had committed the robberies. Had Vasquez committed all the robberies in the same locale and

jurisdiction, his attorney continued, the crimes likely would have been prosecuted as separate counts in the same indictment, which would not have made Vasquez a career offender.

On May 29, 2018, the Court held a sentencing hearing. At the hearing, Vasquez's attorney confirmed that he had reviewed the PSR with Vasquez. The Court then proceeded with the Guidelines calculations. The Court's calculations included (of relevance here) a two-level upward adjustment for obstruction of justice based on Vasquez's high-speed vehicle pursuit; an eight-level upward adjustment for career offender status based on three felony crimes of violence (Vasquez's February 2018 bank robbery conviction, his May 2010 bank robbery conviction, and his October 2007 aggravated robbery conviction); and a three-level downward adjustment for acceptance of responsibility. The Court arrived at an adjusted offense level of 29 and a criminal history category of VI, which resulted in a Guidelines range of 151 to 188 months. The Court then allowed Vasquez's attorney to make any additional arguments regarding Vasquez's sentence, including consideration of the factors under 18 U.S.C. § 3553(a) and any departure provisions. Vasquez's attorney took this opportunity to reiterate the argument he made in his sentencing memorandum about Vasquez's career offender status, arguing that this was "partly a function of geography and jurisdiction" and "somewhat overrepresent[ed] [Vasquez's] real risk to society." Doc. 13-2 at 6:19–7:18. Despite Vasquez's career offender status, Vasquez's attorney asserted that "something less than a career offender guideline sentence" was appropriate. *Id.* at 8:11–20.

The Court thereafter sentenced Vasquez. In doing so, the Court acknowledged it was "a close call" on Vasquez's career offender status and that it was "by dint of geography and timing and the choice that [Vasquez] made to mix up federal and state crimes back in 2007 that place[d] [him] as a career offender." *Id.* at 12:17–23, 15:3–8. The Court then varied downward from the

5

offense level for a career offender (29) to use the offense level for a non-career offender (21), which corresponded to a Guidelines range of 77 to 96 months. The Court imposed a sentence of imprisonment at the top of this range—96 months—because of the nature of the offense and Vasquez's high-speed chase, and the Court also sentenced Vasquez to three years of supervised release after his release from prison. As the basis for the downward variance from the career offender Guidelines range, the Court explained that it "sentenced [Vasquez] based on [an] offense level without career offender enhancement because the crimes committed all occurred within a short specific period of time. Had the crimes been committed within the same jurisdiction or on the same day, the state and federal crimes would have been consolidated and [Vasquez] would not be eligible for career offender" status. C.R. 27 at 3–4. The Court entered judgment on Vasquez's guilty plea and sentence on June 7, 2018.

Vasquez did not directly appeal the Court's judgment. Rather, Vasquez timely filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government filed a response. The Court permitted Vasquez to file a reply, but he did not do so.

## LEGAL STANDARD

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Where the movant "alleges facts that, if true, would entitle him to relief," the Court should hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b);

*Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010). However, the Court does not need to hold an evidentiary hearing where the movant "makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016) (citation omitted); *see also Lafuente*, 617 F.3d at 946 ("To warrant further investigation, a petitioner must support a request with more than 'mere unsupported assertions[.]'"). Ultimately, the Court may deny a § 2255 motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *McCleese v. United States*, 75 F.3d 1174, 1182 (7th Cir. 1996).

## ANALYSIS

Vasquez asserts that he received ineffective assistance from his attorney for several reasons. First, Vasquez contends that his attorney should not have advised him to plead guilty to violating 18 U.S.C. § 2113(a). Second, he contends that his attorney failed to object to the Court's reliance on the post-robbery car chase to enhance his criminal offense level under Guideline § 3C1.2. Third, he contends that his attorney should have argued that he is not a career offender under Guideline § 4B1.1. Based on these contentions, Vasquez seeks to vacate his career offender enhancement and correct his sentence.[3]

The Sixth Amendment guarantees the accused in all criminal prosecutions "the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is crucial to ensure a fair trial because "access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (citation omitted). The mere presence of an attorney "alongside the accused, however, is not enough to satisfy the

---

[3] In interpreting Vasquez's contentions, the Court has construed Vasquez's *pro se* motion liberally and "address[ed] any cogent arguments [it was] able to discern" from the motion. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *McGee v. Bartow*, 593 F.3d 556, 565–66 (7th Cir. 2010).

constitutional command"—a defendant's "right to counsel is the right to the *effective* assistance of counsel." *Id.* at 685–86 (emphasis added) (citation omitted).

Under the Supreme Court's decision in *Strickland*, Vasquez must satisfy two prongs to demonstrate ineffective assistance of counsel; he must show both (1) that his "counsel's performance was deficient" and (2) that this "deficient performance prejudiced [his] defense." *Id.* at 687. The Court addresses each prong in turn.

## I.      Counsel's Performance

For the performance prong, Vasquez must establish that his attorney's performance failed to meet an objective standard of reasonableness under prevailing professional norms. *Id.* at 687–88. The Court's "scrutiny of counsel's performance [is] highly deferential," *id.* at 689, and Vasquez "must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citations omitted) (internal quotation marks omitted). In assessing counsel's performance, the Court does "not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010).

As discussed below, nothing about the performance of Vasquez's attorney fell short of an objective standard of reasonableness. Thus, Vasquez has failed to satisfy *Strickland*'s performance prong.

### A.      Vasquez's Guilty Plea

The Court begins with Vasquez's contentions regarding his attorney's advice to plead guilty to violating 18 U.S.C. § 2113(a).

### 1.      Use of Force and Violence

Vasquez first contends that his attorney should not have advised him to plead guilty under 18 U.S.C. § 2113(a) because his conduct during the October 10 robbery does not satisfy § 2113(a)'s "force and violence" requirement.  Rather, Vasquez continues, the appropriate crime of conviction is 18 U.S.C. § 2113(b), which does not require the use of force and violence and which carries a less lengthy maximum sentence of imprisonment for the amount of money he took (ten years for taking more than $1,000) than § 2113(a) (twenty years).  *Compare* 18 U.S.C. § 2113(a), *with id.* § 2113(b).

This contention is without merit.  The use of force and violence, while sufficient, is not required for conviction under § 2113(a).  A defendant also violates § 2113(a) if he uses intimidation to take money:

> [w]hoever, by force and violence, *or by intimidation*, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined . . . or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a) (emphasis added).  And bank robbery *by intimidation* is the charge the Government brought against Vasquez and to which Vasquez pleaded guilty.

Vasquez does not dispute that his actions in robbing the bank constituted intimidation.[4] Nor could he.  Vasquez admitted in his plea declaration that he took approximately $3,851 from a bank employee "by intimidation."  C.R. 15 at 2.  Then, at his change of plea hearing, Vasquez confirmed under oath the accuracy of the facts set forth in the plea declaration regarding the robbery, including that he took money by intimidation.  *See United States v. Loutos*, 383 F.3d

---

[4] According to Vasquez, the Government contended that his "get-away from the scene of the bank" made his conduct fall within 18 U.S.C. § 2113(a).  Doc. 1 at 15.  The record does not in any way support Vasquez's assertion.

615, 619 (7th Cir. 2004) ("Representations and admissions made by a defendant in a plea

agreement and during a change of plea hearing are [] entitled to 'a presumption of verity.'"

(citation omitted)).

Moreover, the intimidation required by § 2113(a) "is the threat of force, which exists in

situations where the defendant's conduct and words were calculated to create the impression that

any resistance or defiance . . . would be met with force." *United States v. Thornton*, 539 F.3d

741, 748 (7th Cir. 2008) (citations omitted) (internal quotation marks omitted). The Court

applies "an objective test: would the defendant's words or acts cause an ordinary person to

reasonably feel threatened under the circumstances?" *Id.* Here, Vasquez entered the bank and

told the teller, "This is a robbery. Put the money in the bag." C.R. 15 at 2–3. Vasquez's use of

the word "robbery" alone "gave [the teller] reason to be afraid, because the word itself connotes

the threat of force." *United States v. Gordon*, 642 F.3d 596, 599 (7th Cir. 2011). Vasquez's

demand for the teller to give him money that did not belong to him also conveyed an implicit

threat of force. *See United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016), *as amended*

(June 26, 2017) ("A bank employee can reasonably believe that a robber's demands for money to

which he is not entitled will be met with violent force[.]"); *Thornton*, 539 F.3d at 750 ("[A]

demand for money[] may be viewed as an implicit threat of force[.]"); *United States v. Clark*,

227 F.3d 771, 775 (7th Cir. 2000) ("[The defendant's] mere demand that [the teller] give him

money not belonging to him is behavior that may rise 'to the level of intimidation.'" (citation

omitted)). "[W]hen an individual enters a bank, approaches a teller, and demands money

verbally[,]" as Vasquez did, "the teller understands that the demands are not 'mere requests

which could be ignored, but rather, [feels] compelled to comply.'" *United States v.*

*Cunningham*, No. 14 CR 509-1, 2016 WL 687902, at *3 (N.D. Ill. Feb. 19, 2016) (quoting

*Thornton*, 539 F.3d at 748–49). Because Vasquez's actions constituted intimidation under 18 U.S.C. § 2113(a), his attorney's advice to plead guilty under this statutory provision was not deficient.

Vasquez's § 2113(b) argument, which relies upon his erroneous assertion that force and violence are required to violate § 2113(a), similarly fails. Section 2113(b) does not require force, violence, or intimidation; it prohibits the taking and carrying away of money "with intent to steal or purloin." 18 U.S.C. § 2113(b). Perhaps the Government could have charged Vasquez with violating § 2113(b), but it chose not to do so. Instead, it charged Vasquez with violating § 2113(a), and that was the charge Vasquez and his attorney faced. Moreover, because Vasquez followed his attorney's advice in pleading guilty to that charge, the Court granted a three-level reduction based on his acceptance of responsibility. Had Vasquez proceeded to and been convicted at trial without the benefit of this reduction, the corresponding Guidelines range would have been substantially higher.[5] *See Hays v. United States*, 397 F.3d 564, 568–69 (7th Cir. 2005) (counsel's advice to plead guilty was not objectively unreasonable where the defendant's sentence, had he gone to trial, could have been substantially higher because he would not have obtained a three-level downward departure for acceptance of responsibility).

Vasquez also asserts that he told his attorney that they "should present our factual version at the change of plea hearing, play the 911 audio where the 911 operator was being told by the bank employees there was no violence or weapon (ETC)." Doc. 1 at 16–17. Insofar as this "factual version" purportedly differs from the narrative of the robbery that he agreed to in his plea declaration and before the Court, Vasquez fails to identify any differences. *See Long v.*

---

[5] With the three-level reduction for acceptance of responsibility, the Guidelines specify a range of 151 to 188 months if Vasquez was a career offender and 77 to 96 months if Vasquez was not a career offender. If a jury had convicted Vasquez after a trial without the acceptance-of-responsibility reduction, the Guidelines would specify a range of 210 to 262 months if Vasquez was a career offender and 100 to 125 months if Vasquez was not a career offender.

*United States*, 847 F.3d 916, 921–22 (7th Cir. 2017) (rejecting prisoner's suggestion that his attorney should have investigated "the facts underlying" a purported Fourth Amendment violation because the prisoner did not "say what those facts are"); *Boulb*, 818 F.3d at 339 (a prisoner's vague or conclusory allegations do not justify holding an evidentiary hearing). Furthermore, Vasquez has not given the Court any reason to second guess his counsel's apparent decision not to play the 911 audio at the change of plea hearing. *See Johnson*, 624 F.3d at 792 ("[W]e do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient."); *United States v. Malone*, 484 F.3d 916, 920 (7th Cir. 2007) ("[W]e will not play 'Monday morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how best to handle a case.") (footnote omitted)). Indeed, because it was not disputed that Vasquez did not use violence or a weapon during the robbery, it is unclear what the 911 audio call would have added to Vasquez's defense.

In short, Vasquez has not identified anything suggesting that his failure to use force and violence during the October 10 robbery rendered his attorney's advice to plead guilty objectively unreasonable. *See Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) ("[I]n the context of a guilty plea, [the prisoner] must demonstrate that his counsel's advice regarding the plea was objectively unreasonable[.]").

## 2. Constitutionality of § 2113(a) After *Dimaya*

Vasquez also argues that his attorney's performance was deficient because the Supreme Court's decision in *Sessions v. Dimaya*, 584 U.S. ----, 138 S. Ct. 1204 (2018), rendered 18 U.S.C. § 2113(a) unconstitutional. *Dimaya* addressed 18 U.S.C. § 16, which "provides the federal criminal code's definition of 'crime of violence.'" 138 S. Ct. at 1211. Section 16 has

12

two parts: an elements clause, which covers crimes that have an element involving the "use, attempted use, or threatened use of physical force," and a residual clause, which covers "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* (quoting 18 U.S.C. § 16(a), (b)). The Supreme Court found 18 U.S.C. § 16's residual clause unconstitutionally vague because it "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and creates "uncertainty about the level of risk that makes a crime 'violent.'" *Id.* at 1215–16.

Dimaya in no way suggests that the performance of Vasquez's attorney was deficient. As an initial matter, Vasquez's attorney advised him to plead guilty *before* the Supreme Court decided *Dimaya* in April 2018, and Vasquez does not explain why his attorney should have anticipated this decision when he provided this advice. *See Tucker v. United States*, 889 F.3d 881, 885 (7th Cir. 2018) ("[W]e have held that a failure to anticipate a change or advancement in the law does not qualify as ineffective assistance."). In any event, *Dimaya* did not address § 2113, nor did it address a statute that bears any resemblance to § 2113. Specifically, § 2113 does not contain a residual clause that, like the clause in *Dimaya*, defines a crime based on whether the crime, "by its nature, involves a substantial risk" that physical force may be used. *See* 18 U.S.C. § 16(b). Put simply, *Dimaya* provides nothing to support Vasquez's claim that his attorney unreasonably advised him to plead guilty to violating § 2113(a).

### B.     Vasquez's Sentencing

Vasquez's § 2255 motion also challenges his attorney's performance with respect to sentencing. Vasquez argues that his sentence must be corrected because his attorney should have (1) objected to the Court's reliance on the post-robbery car chase to enhance his criminal offense

level under Guideline § 3C1.2 and (2) argued that Vasquez is not a career offender under Guideline § 4B1.1.[6]

### 1.    Guideline § 3C1.2 Enhancement

Guideline § 3C1.2 instructs a court to increase a defendant's offense level by two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  U.S.S.G. § 3C1.2.  In sentencing Vasquez, the Court increased his offense level by two levels because after the robbery, Vasquez "led [] police officers on a high-speed vehicle pursuit and [] eventually struck another car."  Doc. 13-2 at 5:7–13.  Vasquez acknowledged at the sentencing hearing that he "led the police on a high-speed chase" and that everyone was fortunate that he or the police officers did not hurt or kill anyone during the chase.  *Id.* at 12:3–16.

Vasquez first appears to contend that *United States v. Booker*, 543 U.S. 220 (2005), made it unconstitutional for the Court to rely upon "relevant conduct" to enhance his offense level

---

[6] Although Vasquez frames these arguments as being based on alleged errors by his counsel, they actually appear to be based on alleged errors the Court made in using the Guidelines to calculate his sentence.  A defendant generally must raise such challenges in a direct appeal, which Vasquez did not do.  *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999) ("[A]bsent a fundamental miscarriage of justice, 'arguments based on the Sentencing Guidelines must be raised on direct appeal or not at all.'" (citation omitted)).  Nor can Vasquez circumvent this rule "by recasting [his] Guidelines arguments as claims of ineffective assistance of counsel."  *Id.*  Where the imposed "sentence is well below the ceiling imposed by Congress[,]" which is the case here—the maximum sentence for violating § 2113(a) is twenty years— alleged errors in calculating a Guidelines range are not reviewable under 28 U.S.C. § 2255.  *Hanson v. United States*, 941 F.3d 874, 876–78 (7th Cir. 2019) (citation omitted); *Benson v. United States*, No. 20-cv-212-JPG, 2020 WL 2415697, at *2 (S.D. Ill. May 12, 2020) ("As long as a defendant's sentence is within the statutory sentencing range, . . . sentencing guideline calculation errors under the advisory sentencing guidelines are nonconstitutional and are not reviewable in § 2255 proceedings."); *Moyano v. United States*, No. 18 C 2105, 2018 WL 3374752, at *2 (N.D. Ill. July 11, 2018) ("[B]ecause the Sentencing Guidelines are advisory rather than mandatory, arguments concerning alleged court error in sentence calculations are not cognizable on collateral review in a § 2255 motion.").  Nonetheless, the Government did not argue that Vasquez's sentencing arguments are precluded from review under § 2255, so the Court addresses the merits of these arguments.  *See Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008); *Tolen v. United States*, No. 10 C 7228, 2011 WL 37845, at *3, *6 (N.D. Ill. Jan. 5, 2011) (addressing a challenge to the court's Guidelines calculation in a § 2255 motion where the Government did not argue that the prisoner procedurally defaulted the argument).

under Guideline § 3C1.2. But *Booker* did no such thing. To the contrary, by rendering the Guidelines advisory and non-binding, *Booker* allowed district courts to constitutionally engage in judicial factfinding when determining how the defendant's "relevant conduct" affects his sentence. *See United States v. White*, 443 F.3d 582, 592 (7th Cir. 2006); *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006) (after *Booker*, "[d]istrict judges must resolve disputed factual issues, determine relevant conduct by a preponderance of the evidence, and apply the appropriate sentence enhancements in order to compute the advisory guidelines sentence range" (citation omitted)). And since *Booker*, the Seventh Circuit has repeatedly rejected similar unconstitutionality arguments, including a challenge to the same Guideline that Vasquez challenges here. *See, e.g.*, *United States v. Van Waeyenberghe*, 481 F.3d 951, 960 (7th Cir. 2007) (rejecting the defendant's argument that the district court's "reliance on facts not found beyond a reasonable doubt" to increase his sentence violated his Fifth Amendment rights because "judicial factfinding does not create a Fifth Amendment problem under *Booker*"); *United States v. Warren*, 454 F.3d 752, 762–63 (7th Cir. 2006) (rejecting the defendant's argument that after *Booker*, the jury had to "make the factual findings necessary to support an obstruction-of-justice enhancement" under Guideline § 3C1.1); *White*, 443 F.3d at 592 (finding that the district court's post-*Booker* sentencing enhancement under Guideline § 3C1.2 was "not constitutionally infirm"). Because there was nothing unconstitutional about the Court's two-level enhancement under Guideline § 3C1.2, there was no legitimate basis for Vasquez's attorney to object to this enhancement on constitutionality grounds. *See Fuller v. United States*, 398 F.3d 644, 650–52 (7th Cir. 2005) (counsel's performance during sentencing was not deficient where the defendant failed to identify any legitimate, non-frivolous objections his counsel failed to make to the court's sentencing enhancements); *United States v. Carter*, 355

F.3d 920, 924 (6th Cir. 2004) ("[C]ounsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues.").

Vasquez also argues that his attorney should have objected to the Court's reliance upon conduct stemming from a "traffic citation" and "class (a) misdemeanor" to support the two-level enhancement under Guideline § 3C1.2. Doc. 1 at 15. This argument is frivolous. To the extent Vasquez received a traffic citation for his post-robbery conduct, it was not a mere parking ticket. It was a citation for resisting an attempted traffic stop; for running a red light and a stop sign, driving into oncoming traffic, and reaching a speed of 73 mph in a 35-mph zone; and for striking a stopped car and concrete median while trying to get around the car. These facts are set forth in the PSR, and Vasquez did not dispute their accuracy during sentencing. Nor does he dispute these facts now. In fact, Vasquez acknowledged in open court that he "led the police on a high-speed chase" and that everyone was fortunate that he or the police officers did not hurt or kill anyone during the chase. Doc. 13-2 at 12:3–16. Vasquez's high-speed chase was "clearly the sort of reckless behavior covered by § 3C1.2," *White*, 443 F.3d at 592 (citation omitted), so his attorney was not deficient in failing to object to the Court's sentencing enhancement based on this Guideline. *See Fuller*, 398 F.3d at 650–52; *Carter*, 355 F.3d at 924; *see also Duarte v. United States*, 81 F.3d 75, 76 (7th Cir. 1996) ("[O]mitting a motion to suppress raises questions about counsel's performance only if there was a basis for that relief.").

### 2. Guideline § 4B1.1 Enhancement

Under Guideline § 4B1.1, a defendant is a career offender and subject to an enhancement of his offense level if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the

> instant offense of conviction is a felony that is either a crime of
> violence or a controlled substance offense; and (3) the defendant
> has at least two prior felony convictions of either a crime of
> violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Vasquez's February 27, 2018 guilty plea to bank robbery under 18 U.S.C.

§ 2113(a) is his "instant offense of conviction." Vasquez also has at least three "prior felony

convictions": (1) an October 15, 2007 conviction for aggravated robbery under Illinois law;

(2) an October 30, 2007 conviction for robbery under Illinois law; and (3) a May 28, 2010

conviction for bank robbery under 18 U.S.C. § 2113(a).[7]

Vasquez argues that because he did not use force while committing his instant offense or

his prior robbery felonies, none of these crimes are "crimes of violence" as required by Guideline

§ 4B1.1. He also appears to contend that the language of his statutes of conviction is too vague

or the "crime of violence" definition is too broad for his crimes to meet the definition. Vasquez

faults his attorney for not raising these issues.

But there were no legitimate arguments for Vasquez's attorney to raise. First, in

determining whether Vasquez's convictions constitute crimes of violence under Guideline

§ 4B1.1, the Court does not consider Vasquez's underlying conduct; it only considers the

statutory elements of the crimes of conviction. *See United States v. Vesey*, 966 F.3d 694, 696–97

(7th Cir. 2020) ("[T]o determine whether an offense is a crime of violence for Guidelines

purposes[,] . . . we consider whether the elements of the offense match the definition of a crime

of violence without looking to the specific underlying facts of the conviction."); *United States v.

Billups*, 536 F.3d 574, 576–77 (7th Cir. 2008) ("The crime-of-violence determination is a legal

inquiry into the nature of the conviction, not a factual inquiry into the underlying conduct of the

---

[7] In his motion, Vasquez further states that "for my priors, the Illinois crime of intimidation also requires that a threat must be made." Doc. 1 at 16. The PSR, however, does not identify any convictions for intimidation under Illinois law.

defendant."). Second, it is well-settled that Vasquez's instant offense and his May 2010 offense—convictions under 18 U.S.C. § 2113(a)—are crimes of violence for purposes of Guideline § 4B1.1's career offender enhancement. *E.g.*, *United States v. Pasley*, 789 F. App'x 552, 553 (7th Cir. 2020); *United States v. Campbell*, 865 F.3d 853, 855 (7th Cir. 2017); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991); *Kreier v. United States*, 16-cv-430-jdp, 2017 WL 3835697, at *2 (W.D. Wis. Aug. 31, 2017); *Cunningham*, 2016 WL 687902, at *2–3. Vasquez's October 2007 convictions for robbery and aggravated robbery under Illinois law are likewise crimes of violence under Guideline § 4B1.1. *E.g.*, *Pasley*, 789 F. App'x at 553; *United States v. Davis*, 712 F. App'x 578, 579–80 (7th Cir. 2018); *United States v. Bedell*, 981 F.2d 915, 915–16 (7th Cir. 1992); *United States v. Brown*, 916 F.3d 706, 708 (8th Cir. 2019); *King v. United States*, No. 16-2072, 2016 WL 4445745, at *2–3 (C.D. Ill. Aug. 22, 2016); *see also United States v. Chagoya-Morales*, 859 F.3d 411, 414, 421–22 (7th Cir. 2017) (holding that the defendant's 2008 conviction for aggravated robbery under Illinois law constituted a "crime of violence" under a different, but similarly-worded, Guideline). What is more, Vasquez's convictions have all been for robbery, which Guideline § 4B1.2 expressly identifies as a "crime of violence" for purposes of the career offender enhancement. U.S.S.G. § 4B1.2(a)(2); *Kreier*, 2017 WL 3835697, at *2; *King*, 2016 WL 4445745, at *3.[8]

---

[8] Although it is not entirely clear, Vasquez may have intended to also argue that his robberies no longer constitute crimes of violence after *Dimaya*. If so, this is not the case. *See Lipsey v. United States*, No. 3:18-CV-417 RLM, 2019 WL 2451073, at *1–2 (N.D. Ind. June 11, 2019) (rejecting argument that bank robbery under 18 U.S.C. § 2113(d) is no longer a crime of violence after *Dimaya*); *United States v. Sutton*, No. 1:18-CV-172, 2019 WL 1652084, at *2 (N.D. Ind. Apr. 17, 2019) (same for attempted Hobbes Act robbery); *Roundtree v. United States*, No. 1:18-cv-02238-TWP-MJD, 2019 WL 590525, at *2 (S.D. Ind. Feb. 13, 2019) (same for Hobbs Act robbery); *Moses v. United States*, No. 18-cv-01349-DRH, 2018 WL 5437709, at *2 (S.D. Ill. Oct. 29, 2018) (same for bank robbery under 18 U.S.C. § 2113(a)). Moreover, the residual clause in 18 U.S.C. § 16 invalidated by *Dimaya* bears no similarity to either of Guideline § 4B1.2's definitions for "crime of violence." True, § 16's elements clause is similar to Guideline § 4B1.2's elements clause, *compare* 18 U.S.C. § 16(a), *with* U.S.S.G. § 4B1.2(a)(1), but *Dimaya* did not address, let alone invalidate, § 16's elements clause or any other similarly worded clause.

Given Vasquez's convictions, the Guidelines, and the relevant caselaw, it was reasonable (if not necessary) for his attorney to concede that Vasquez is a career offender under Guideline § 4B1.1, which he did. Vasquez's attorney could have left it at that, which alone might have been reasonable as well. Yet Vasquez's attorney did more. He explained how Vasquez committed all three prior robberies during a single bad week. He then argued that Vasquez's commission of these robberies in different jurisdictions and locales made his actions count as three separate robberies, whereas if Vasquez had committed all the robberies in the same locale and jurisdiction, the crimes likely would have been prosecuted as separate counts in the same indictment, which would not have made him a career offender. As Vasquez's attorney put it, "[t]he accident of who prosecuted [Vasquez] and whether indictments were combined or not should not necessarily dictate a six year swing as to [Vasquez's] punishment." C.R. 21 at 5. He then reiterated this argument at the sentencing hearing. And this argument was ultimately persuasive; the Court found it to be "a close call on career offender" status because of the "dint of geography and timing and the choice that [Vasquez] made to mix up federal and state crimes," Doc. 13-2 at 12:17–23, 15:3–8, and it sentenced Vasquez to 96 months based on an offense level (21) and Guidelines range (77 to 96 months) that corresponded to *non*-career offender status. *See* C.R. 27 at 3–4 (explaining that the Court sentenced Vasquez based on an "offense level without career offender enhancement" because "[h]ad the crimes been committed within the same jurisdiction or on the same day, the state and federal crimes would have been consolidated and [Vasquez] would not be eligible for career offender" status). Vasquez's sentence is 55 months less than the low end of the range suggested by the Guidelines for a career offender (151 to 188 months), and had Vasquez's attorney not made any argument regarding the nuances of

---

*Dimaya*, 138 S. Ct. at 1211; *see also Sutton*, 2019 WL 1652084, at *2 ("*Dimaya* did 'not have anything to do with the elements clause' of [18 U.S.C.] § 924 or any other statute." (citation omitted)).

Vasquez's prior felony convictions, Vasquez likely would have faced a sentence much closer to this range.

Far from being deficient, counsel's legal arguments with respect to Vasquez's career offender status almost certainly saved Vasquez many months in prison. There is no merit to Vasquez's ineffective assistance argument on this point. *See Avitia v. United States*, No. 09 CV 4712, 2010 WL 4705167, at \*6 (N.D. Ill. Nov. 10, 2010) (finding the prisoner's claim that his counsel was ineffective at his sentencing hearing baseless where, "[a]s a result of his counsel's advocacy, [the prisoner] obtained a sentence that was a full fifteen months shorter than the minimum sentence recommended by the sentencing guidelines").

## II. Prejudice

Even had Vasquez shown that his attorney performed deficiently (and he has not), Vasquez cannot succeed on his ineffective assistance of counsel claim because he has failed to show prejudice. "[T]here is a presumption that [Vasquez] has not suffered prejudice," and Vasquez "must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Perrone*, 889 F.3d at 908 (citation omitted). In the context of Vasquez's guilty plea, this means that Vasquez must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted). To make this showing, Vasquez "must do more than simply allege 'that he would have insisted on going to trial.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citation omitted). He must "come forward with objective evidence that he would not have pled guilty," such as evidence regarding "the nature of the misinformation provided by the attorney to [him] and the history of plea negotiations." *Id.* With respect to his sentencing, Vasquez "must show that but for his counsel's unprofessional error,

there is a reasonable probability that the results [of the sentencing hearing] would have been different." *Berkey v. United States*, 318 F.3d 768, 773–74 (7th Cir. 2003). To meet this burden, Vasquez must identify "evidence he would have presented that would create a reasonable probability that the result of [the sentencing] proceedings would have been different." *Id.* at 774; *accord Fuller*, 398 F.3d at 650, 652.

Here, Vasquez has not made the requisite showings. Vasquez does not allege that but for his attorney's alleged errors, he would have insisted on going to trial, let alone identify any evidence that would support such an allegation. Nor does Vasquez identify any evidence that his attorney failed to present that reasonably could have resulted in a lower sentence than the sentence he received. Indeed, the primary contention underlying Vasquez's claim of prejudice— that he should have received a lighter sentence because he is not a career offender—ignores Vasquez's express acknowledgment in his plea declaration "that he may be considered a career offender under § 4B1.1." C.R. 15 at 5. Vasquez also overlooks the fact that his attorney's advocacy persuaded the Court to sentence him based on, and within, the Guidelines range for a defendant who is *not* a career offender. The Court further notes that even if Vasquez should not have been considered a career offender, his 96-month sentence is still presumptively reasonable based on the non-career offender Guidelines. *See United States v. Gumila*, 879 F.3d 831, 837 (7th Cir. 2018) ("A sentence within a properly calculated guidelines range is presumptively reasonable."); *United States v. Della Rose*, 435 F.3d 735, 737 (7th Cir. 2006) (a sentence at the top of the Guidelines range "is presumptively reasonable").

Vasquez has not come close to demonstrating that he was prejudiced by his attorney's legal performance. Vasquez's failure to satisfy *Strickland*'s prejudice prong provides a second, independent basis for denying his § 2255 motion.

21

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner.  A petitioner is entitled to a certificate of appealability only if he can make "a substantial showing of the denial of a constitutional right."  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)).  To make this showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Whether to issue a certificate of appealability is a threshold issue, and its determination neither requires nor permits full consideration of the factual and legal merits of the claims.  *Miller-El*, 537 U.S. at 336.  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *Id.* at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find the Court's ruling debatable.  *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).  Accordingly, the Court declines to issue a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, the Court denies Vasquez's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1], thereby terminating his case. The Court further declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Dated: December 1, 2020

SARA L. ELLIS
United States District Judge